ROBERT KERR *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.

Worcester. September 27, 1954. — December 21, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Employment Security,* What constitutes unemployment.

An employee, whose employment terminated before retirement and who on its termination was paid in a lump sum the full and exact amount accumulated to his credit over a period of years in an irrevocable profit sharing trust established and entirely financed by the employer primarily to provide employees with monthly benefits after retirement as a reward for length of service, received through such payment simply what he was entitled to as a beneficiary of the trust and not remuneration which could "reasonably be considered to apply" to a certain period of weeks following the termination of his employment within § 1 (v) inserted in the employment security law, G. L. (Ter. Ed.) c. 151A, by St. 1951, c. 763, § 2, and was not disqualified by the payment from obtaining benefits under that law for such weeks as one "in total unemployment" within § 1 (r) (2), as appearing in St. 1951, c. 763, § 1.

PETITION, filed in the Central District Court of Worcester on December 11, 1952, for review of a decision by the board of review in the division of employment security.

The case was heard by *Allen, J.*

*Warren C. Lane, Jr.,* for the petitioner.

*George Fingold,* Attorney General, *Stephen F. LoPiano, Jr.,* & *Lazarus A. Aaronson,* Assistant Attorneys General, for the director of the division of employment security, submitted a brief.

QUA, C.J. This is an appeal under the employment security law, G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, as amended by St. 1947, c. 434,[1] from a decision of a judge of the Central District Court of Worcester sustaining the action of the board of review, which affirmed a decision of the director whereby Kerr was disqualified from receiving benefits "for the week ending May 3, 1952, through the week ending September 13, 1952." The reason for the disqualification was the receipt by Kerr, on or about April 30, 1952, of the sum of $1,231.70 from a profit sharing trust which had been established about ten years before by his employer, the Bell Company.

The facts as found by the board, in so far as they need be stated for the purposes of this decision, are these: Prior to April 30, 1952, Kerr had been employed by the Bell Company for about eighteen years. On that day the department in which he worked was discontinued, and he and the other employees in that department were dismissed. The purpose of the trust is found to have been to reward all who had been in the company's service for five or more years. The trust is irrevocable and noncontributory as to employees. Its funds are made up entirely of annual contributions by the company from its earnings. The fund is administered by three trustees independently of the company. The assets of the trust are for the sole benefit of the company's employees and under no circumstances can they be received by the company. The profit sharing plan is "normally coupled with Retirement" at age sixty-five, at which time the employee becomes entitled to benefits in the form of monthly payments over a period of twelve

---

[1] The amendment by St. 1951, c. 763, § 18, does not affect the right of appeal to this court.

years, the amount of which depends "on the total sum which may have accumulated for an Employee at the time of distribution." In case of the death of an employee "before the entire net credit balance set aside for him under the Plan has been distributed to him, the net balance remaining to his credit" shall be paid over to persons previously designated by him or to his estate. When termination of employment occurs before retirement but after the employee has been a beneficiary for ten years, or earlier if the termination is involuntary through no fault of the employee, he is entitled to receive "the total credit balance of his account." This balance is ascertained by crediting each employee annually an amount based upon the wages paid him for the year, and a statement is issued to him showing the amount credited to his account for that year.

The employment security law, G. L. (Ter. Ed.) c. 151A, § 29 (a), as appearing in St. 1946, c. 170, § 1, provides a schedule of benefit payments for persons "in total unemployment." By c. 151A, § 1 (r) (2), as appearing in St. 1951, c. 763, § 1, an individual is "in total unemployment in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration . . . ." Section 1 (v) of the same chapter, inserted by St. 1951, c. 763, § 2, defined "remuneration" and read as follows: "'Remuneration,' any consideration, whether paid directly or indirectly, including salaries, commissions and bonuses, and reasonable cash value of board, rent, housing, lodging, payment in kind and all payments in any medium other than cash, received by an individual (1) from his employing unit for services rendered to such employing unit, (2) as net earnings from self-employment, and (3) as severance payments, dismissal pay, or vacation allowances. Remuneration shall be deemed to have been received in such week or weeks in which it was earned or for such week or weeks, including any fractions thereof, to which it can reasonably be considered to apply. If the length of the period to which the remuneration applies is not clearly identified, such period shall be determined by dividing such remuneration

by the amount of the individual's average weekly wage." See now St. 1953, c. 635, §§ 1, 2.

The board of review, whose decision was sustained by the judge of the District Court, held in substance that the payment to Kerr of $1,231.70 from the trust fund at the time of the discontinuance of the department where he worked was "remuneration" received by Kerr "indirectly" from the employing unit and was a severance payment and could "reasonably be considered to apply" to the weeks following its receipt, so that for the weeks in question Kerr had received "remuneration" and so was not in "total unemployment" and was not entitled to benefits.

Each of these conclusions of the board of review is vigorously contested, but we do not find it necessary to pass upon all of them, since we are of opinion that even if the payment was "remuneration" received by Kerr "indirectly" from his employer and was a severance payment in the sense that it became payable upon cessation of the employment, it nevertheless could not "reasonably be considered to apply" to the weeks after Kerr's employment had ended. If the sum paid was "consideration" received from his employing unit at all it would seem that it must have been "earned" during the many weeks while Kerr was at work for the company and not after he ceased work, and must be "deemed to have been received" in the "weeks in which it was earned." See *In re Public Ledger, Inc.* 161 Fed. (2d) 762, 773 and note. But quite apart from this, the payment to Kerr of $1,231.70 was simply the payment to him of his money to which he was entitled as a beneficiary of the trust. For years he had had in the trust fund an equitable interest the exact amount of which stood on the books of the trust to his credit and of the amount of which he had been notified annually. If he had remained in employment until he retired at sixty-five his share in the trust would have been paid to him in monthly instalments, but the terms of the trust also made provision for the contingency which has happened and when his employment ceased re-

quired the payment to him of the total balance credited to him. The obvious reason for this was that when the employment ended it became impossible to carry out the pension feature of the trust according to its terms, and the employee was therefore allowed to withdraw at once what may be considered as his deposit in the fund. The case is not so greatly different from one in which an employee through a series of years makes regular deposits out of his wages in a savings bank and then withdraws the sum deposited when his employment ceases. The case does differ materially from the more or less common one where the employer, whether or not bound by contract, pays to the employee upon severance a sum of money, usually moderate in amount, in addition to his regular wages, the purpose of the payment being to tide the employee over the period while he is looking for another job. In that case it might well be that the payment could "reasonably be considered to apply" to the weeks following severance, since it could be deemed to have been made with reference to those weeks. In the case before us, however, its seems plain that the payment of $1,231.70 was not made with reference to any possible period of unemployment. It was made because the trust was maintained for employees and it was natural that it should contain some provision whereby a beneficiary whose employment ceased should be paid his share and should cease to be a beneficiary. The amount paid to Kerr was exactly his share in the trust fund.

It may be well to remember that the rule adopted by the board of review and the judge of the District Court might conceivably in some instances result in the employee being barred from all employment security for a long period, though the possession of much more property outside of a profit sharing trust would have no effect at all upon his security rights.

We are of opinion that the payment to Kerr of $1,231.70 could not "reasonably be considered to apply" to the period of twenty weeks, "for the week ending May 3, 1952, through the week ending September 13, 1952," so as to bring about

the result that during all that time Kerr was not in "total unemployment."

We reach this conclusion the more readily because it seems at least seriously doubtful whether, if Kerr had been receiving pension payments by the month instead of having received the balance due him in one lump sum, his pension receipts, even though related to particular periods of time, could have been applied as against unemployment benefits for those same periods. By St. 1939, c. 490, § 9, the Legislature expressly provided that benefits should be offset by pension payments from private industry, but in the corresponding section of the general revision of 1941, § 25 (d), as appearing in St. 1941, c. 685, § 1, no mention is made of pension payments. This seems to indicate a legislative intent that pensions from private industry should not be applied against benefits.

The decision of the judge of the District Court is reversed, and the case is to be remanded to the board of review for further proceedings in conformity with this opinion.

*So ordered.*