LOUISE ZABROWSKI *v.* ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued January 7—decided March 4, 1959

216

 

 

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellant (named defendant).

*Ernest A. Inglis, Jr.,* for the appellee (defendant North and Judd Manufacturing Company).

MELLITZ, J. The plaintiff, seventy-two years old, worked for the North and Judd Manufacturing Company, hereinafter referred to as the company, from 1945 to June 29, 1956, when she was involuntarily retired by the company. About one month after her retirement she received a lump sum payment of $577.61 under a retirement plan established by the company in 1945. She filed a claim for unemployment compensation as of July 1, 1956. Her weekly benefit rate was $24. Her average weekly wage during the twelve-month period prior to her retirement was $47.52. Under the provisions of what is now § 31-236 (4) (a) of the 1958 Revision of the General Statutes, an individual is ineligible for benefits during any week with respect to which he has received remuneration in the form of "any payment by way of compensation for loss of wages." The unemployment commissioner held that the plaintiff was not rendered ineligible for benefits by reason of the payment she received under the retirement plan and affirmed an award made to her

by the administrator. The Superior Court, on an appeal taken by the company, reversed the commissioner and held that the payment to the plaintiff was a pension payment, the equivalent of twelve weekly wage payments, and that it disqualified her from receiving unemployment benefits for a period of twelve weeks. From the judgment of the Superior Court the administrator has brought this appeal.

The plan established by the company in 1945 was designed to provide retirement annuities and other benefits to those of its employees who would become eligible under its terms. As part of the plan, the company made contributions of a percentage of its profits to a trust it created. After five years, 50 per cent of an employee's interest became vested, and annually thereafter an additional 10 per cent became vested, so that by the end of ten years the employee's entire interest was fully vested and payable as indicated in the plan. The interest of an employee in the trust fund was distributable only on death or retirement, except that the vested interest of an employee who had been discharged or who had resigned was distributable, in the case of a man, upon his reaching the age of sixty-five, and in the case of a woman, upon her reaching the age of sixty, or in a series of instalment payments commencing within one year from the date of severance from employment. If the employee was not then living, his interest went to his beneficiary or estate. The interest of a retired person was payable only in such instalments and at such times and in such manner as the administrative committee set up under the plan might direct. Payment could be directed in the form of life insurance or annuity contracts, or deferred instalment payments over a period of twenty years.

The committee adopted the policy of making payments monthly, computed by dividing the total amount standing to the credit of the retired person by his life expectancy, except that to a person employed for less than twenty years payment was made in a lump sum for the reason that monthly instalments in the case of such a person would be very small and administratively undesirable. It was in pursuance of this policy that the sum of $577.61, the amount standing to the credit of the plaintiff on her retirement, and to which she had acquired a vested right, was paid to her in a lump sum rather than in monthly instalments computed on the basis of her life expectancy. The issue is whether the receipt of this payment disqualified the plaintiff from receiving unemployment benefits during the twelve-week period following her retirement from employment.

The legislative purpose in adopting the provisions in § 31-236 (4) (a) relating to disqualification was to prevent a duplication of benefits to an individual with respect to a week in which he was receiving payment from his employer as compensation for loss of wages. Accordingly, we have held an individual disqualified where the compensation was in the form of a vacation payment made out of the employer's own resources; *Kelly* v. *Administrator,* 136 Conn. 482, 487, 72 A.2d 54; or out of an employer-financed, union-administered welfare fund; *Conon* v. *Administrator,* 142 Conn. 236, 246, 113 A.2d 354; or in the form of a pension paid out of an employer-financed plan; *Kneeland* v. *Administrator,* 138 Conn. 630, 635, 88 A.2d 376; or out of a plan jointly financed by employer and employees, at least to the extent the pension was increased by the employer's contributions; *Barclay* v. *Administrator,* 139 Conn. 569,

572, 95 A.2d 797; or out of an employer-financed severance pay plan. *Brannigan* v. *Administrator,* 139 Conn. 572, 577, 95 A.2d 798.

Following the *Kneeland* decision, supra, the legislature in 1953 added what is now subdivision (c) of § 31-236 (4): ". . . or (c) retirement pay or a pension paid directly by the employer or paid indirectly by the employer in the manner set forth in subdivision (5) of [subsection (b) of section 31-222], provided, if the weekly amount of such retirement pay or pension is less than the individual's total unemployment benefit rate, . . . such person shall be eligible for benefits at a reduced rate and his total unemployment benefit rate shall be reduced by the number of whole dollars in the weekly amount of such retirement pay or pension." Cum. Sup. 1955, § 3074d. The effect of this amendment was to make special provision for the employee receiving remuneration in the form of retirement pay or a pension. Prior to the amendment an employee was totally ineligible for unemployment benefits during any week with respect to which he received any pension payment, no matter how small. *Kneeland* v. *Administrator,* supra, 636. Under subsection (4) (c) of § 31-236, an employee remains eligible for benefits, but at a reduced rate, if the weekly amount of retirement pay or pension paid to him is less than his total unemployment benefit rate. The trial court interpreted the plan established by the company as a pension plan, and the payment to the plaintiff a pension payment. It concluded that the payment was a substitute for wages lost by her by reason of the loss of her job and that the disqualification provisions of § 31-236 (4) applied. The administrator contends that the plan is one of deferred compensation, rather than a pension plan, that for some time prior

to her retirement the plaintiff had an indefeasible right to the sum of $577.61, which stood to her credit in the trust fund, and that when payment was made to her it was in no sense a payment by way of compensation for loss of wages but a payment of deferred earned compensation and therefore not a basis for disqualification under the statute.

The character of the payment depends on an interpretation of the nature of the plan under which it was made. The basis of the administrator's position is that the expressed intention of the plan was to qualify it as a profit-sharing plan under the provisions of § 165 of the Internal Revenue Code of 1939 (52 Stat. 518, § 165 [a]; now Int. Rev. Code of 1954, § 401 [a]), which draws a clear distinction between a pension plan and a profit-sharing plan. The plan did so qualify. A principal difference is that, for tax purposes, contributions by an employer to a pension trust are deductible only to the extent of 5 per cent of the compensation paid to participating employees, while contributions to a profit-sharing trust are deductible to the extent of 15 per cent. Int. Rev. Code of 1954, § 404 (a) (1) (A), (a) (3) (A). Treasury department regulations interpreting these sections of the code point out the criteria distinguishing the plans and that a profit-sharing plan, within the meaning of the code, is primarily a plan of deferred compensation. 26 C.F.R. § 1.401-1 (b) (1) (ii) (1956); 2 CCH 1959 Stand. Fed. Tax Rep. ¶ 2604. It does not follow, however, that if the payment made to the plaintiff was deferred compensation, and not a pension, it was not within the disqualifying provisions of the statute. The distinction is of no consequence if the payment was "retirement pay" within the meaning of the statute. Under subsection (4) (c) of § 31-236,

disqualification arises during any week with respect to which the individual has received retirement pay or a pension paid directly by his employer or indirectly through a plan such as that established by the company here. While the plaintiff had acquired a vested interest in the trust fund, she had no right to payment of the amount of her interest until her severance or retirement from employment, and then only in the form determined by the committee administering the plan. If the payment represented payment of deferred compensation, it was none the less retirement pay. *Retirement Board* v. *McGovern,* 316 Pa. 161, 169, 174 A. 400. We hold that the payment received by the plaintiff was retirement pay within the meaning of § 31-236 (4) (c).

The remaining question is the propriety of treating the payment of $577.61 as the equivalent of twelve weekly wage payments, thereby disqualifying the plaintiff from unemployment benefits during the twelve-week period following her retirement. While the plaintiff had acquired a vested interest in the trust fund to the extent of the amount paid to her, she had no control over the manner in which payment was to be made. Under the provisions of § 31-236 (4) (c), she was entitled to unemployment benefits at her total unemployment benefit rate reduced by the number of whole dollars in the weekly amount of such retirement pay as she received. The manner in which payment was to be made to her was in the discretion of the committee administering the plan. It could have directed payment to her in the form of a life insurance or annuity contract or deferred instalment payments. It had adopted a policy of making payments monthly, the amount being computed by dividing the total amount standing to the credit of the retired person by his life ex-

pectancy. In the case, however, of a person who was employed for less than twenty years it chose to make payment in a lump sum. It can hardly be said that if the committee had directed payment to the plaintiff in monthly payments, or in the form of a life insurance or annuity contract, she would have been considered as having thereby received twelve weekly wage payments and so to be totally disqualified from unemployment benefits during the twelve-week period following her retirement. In *Kerr* v. *Director,* 332 Mass. 78, 123 N.E.2d 229, involving a profit-sharing plan similar in many respects to the plan here, the court refused to treat the payment received by the employee as applicable solely to the period immediately following the termination of the employment and therefore as disqualifying the applicant from unemployment benefits. It is clear that irrespective of the manner of payment to the plaintiff, her unemployment benefits were required to be computed in accordance with the provisions of subsection (4) (c) of § 31-236 and the weekly amount of her retirement pay determined by treating the $577.61 as retirement pay extending over the period of her life expectancy. The weekly amount would thus be ascertained by dividing $577.61 by the number of weeks of her life expectancy. The weekly amount of her retirement pay would be too small to disqualify the plaintiff wholly from receiving unemployment benefits, but the amount of each weekly unemployment benefit would be reduced by the number of whole dollars in the weekly amount of her retirement pay computed as hereinbefore stated.

There is error in part, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.