**FIRST BANK OF COMMERCE, Respondent,**

**v.**

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, The Division of Employment Security of Missouri and Ruth T. Murray, Appellants.**

**No. WD 31225.**

Missouri Court of Appeals, Western District.

Feb. 2, 1981.

Kevin Hare, Catherine Barrie, Jefferson City, for appellant Labor and Indus. Relations Commission of Missouri.

Rick V. Morris, Jefferson City, for appellant Division of Employment Security of Missouri.

Larry M. Woods, Columbia, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

The Labor and Industrial Relations Commission appeals the order of the circuit court reversing the decision of the commission which had found claimant Ruth T. Murray entitled to benefits under the Missouri Employment Security Law, Chapter 288, RSMo 1978. At issue is whether the claimant was ineligible to receive unemployment compensation by the proscription

of § 288.040.3(1), RSMo 1978[1] because she received termination allowances or a pension upon severance of her employment with respondent, First Bank of Commerce.

The claim for benefits was initially reviewed and approved by the Division of Employment Security. On appeal of the award by the employer, first to the Appeals Tribunal and subsequently to the Labor and Industrial Relations Commission, the payment of benefits was directed and the employer sought judicial review in the circuit court of Boone County. That court found the claimant disqualified from receiving benefits by reason of § 288.040 because a termination allowance had been paid. The commission and the Division of Employment Security appeal.

Appellants contend that the payment which the claimant received on her involuntary termination was a mandatory distribution of her vested interest in a qualified profit sharing plan and that the payment was neither a termination allowance nor a pension within the provisions of § 288.040. They also complain that the trial court erroneously assessed the costs of this proceeding against the state. Reversed.

Ruth T. Murray, the claimant, did not appear in the trial court and she has not participated in this appeal. The cause is, however, appropriately before this court because the commission and the division have an independent right to prosecute an appeal where an order allowing unemployment compensation benefits is reversed. *Dubinsky Bros., Inc. v. Industrial Commission of Missouri*, 373 S.W.2d 9 (Mo. banc 1963); *Mid-Continent Aerial Sprayers, Inc. v. Industrial Commission*, 420 S.W.2d 354 (Mo. App.1967).

The sole question in this case is one of law—the interpretation and application of § 288.040 to the undisputed facts. While it is the result reached by the circuit court which has generated this appeal, this court reviews the decision of the administrative body, not the judgment of the circuit court. *Ingram v. Civil Service Commission of the City of St. Louis*, 584 S.W.2d 633 (Mo.App.1979). The scope of review here is the same as it was in the circuit court. The decision of the administrative body on a question of law does not preclude, restrict or control review of the issue by the court. *Bussmann Mfg. Co. v. Industrial Commission*, 335 S.W.2d 456 (Mo.App.1960); *Kroger Co. v. Industrial Commission*, 314 S.W.2d 250 (Mo.App.1958). We therefore reach our own determination as to whether the payment received by the employee as her share in the profit sharing plan constituted a termination allowance or a pension within the meaning of § 288.040.

Ruth T. Murray had long been employed by the First Bank of Commerce when, in May of 1977, the bank adopted a policy for compulsory retirement of employees at age 65. Claimant was at that time 72 years of age. She was involuntarily retired in December 1977, following which the claim for benefits here in dispute was filed. Under these facts, it is apparent and uncontested that Ruth T. Murray did not leave her work voluntarily and that no cause attributable to her work, beyond her attainment of the stated age, caused or contributed to cause her termination.

Respondent bank had adopted, more than ten years prior to claimant's retirement, a profit sharing plan whereby the employer set aside annually a portion of profits for the benefit of its employees. The funds so accumulated were paid to a trustee and invested for the benefit of the employee-participants. The plan obligated the employer to no specific contributions but the amounts so paid are tax deductible and tax benefits are a feature attractive to employers who adopt such a plan. The rights of employee-participants depend on years of service and rate of pay. The interest of an employee in his share of the plan vests absolutely after ten years' employment and is distributable to him or to his heirs or estate in accordance with the provisions of the plan.

1. All statutory references are to RSMo 1978 except as noted.

The interest of Ruth T. Murray in the profit sharing plan had fully vested when she was compelled to retire. Under an available option of the plan, she elected to receive and was paid the cash value of her interest as computed by the trustee, United Missouri Bank of Kansas City. The extent of that interest or share depended on the claimant's years of service and rate of compensation. The value in the case as here where liquidation is required to distribute the share in cash depends on the price of security investments at the date of liquidation. Ruth Murray received payment in the amount of $14,254.07 on April 12, 1978.

The issue is whether that payment from the profit sharing plan is either termination pay or a pension within the language of § 288.040.

The question has not been ruled in this state on comparable facts. Respondent employer relies on *Globe-Democrat Publishing Co. v. Industrial Commission*, 301 S.W.2d 846 (Mo.App.1957), a case which held a discharged employee ineligible under § 288.040 to receive unemployment compensation because he had been paid a termination allowance. There, as here, the employee contended that the payment was a deferred bonus and was compensation for prior service referable to that service and not to the discharge.

In *Globe-Democrat*, the employer was obligated under a collective bargaining agreement to pay employee members of the newspaper guild a lump sum dismissal payment where discharge occurred for reasons other than misconduct. Subject to a maximum, the discharged employee was entitled to one week's pay for each six months of last continuous employment. Employees who retired, who voluntarily left for other employment, who were disabled or were discharged for cause were not entitled to the dismissal allowance. No benefit was provided for the heirs or estate of a deceased employee.

The *Globe-Democrat* case is distinguishable from and inapplicable to the present case both on the facts and the concept of the termination payment allowance. There, the employer assumed an advance, contractual obligation for a fixed sum payment to employees discharged for reasons unrelated to their job performance. Quite obviously, the payment was designed to provide a compensatory adjustment to any employee who, though ready and capable of continuing this work for the employer, is discharged and forced to seek another source of income. Until the event of discharge, no right accrued to any employee and no liability was imposed on the employer. The contingent nature of the payment circumstance included the possibility that no allowance would ever become due.

While the employer in *Globe-Democrat* contracted to pay a sum to employees when and if discharged under certain conditions, the First Bank of Commerce in the present case assumed no payment obligation referable to the event of leaving the bank's employ. The origin of Ruth T. Murray's payment benefit was not in her separation from employment but in her years of service with the bank by which she acquired a vested interest in the profit sharing trust. The conditions under which her employment ended were irrelevant because they did not affect either her entitlement to the payment or computation of the sum she would receive.

The purpose for which the profit sharing plan was established is recited in the plan document itself. It there states that the plan has been adopted "* * * to reward the loyal, faithful and efficient services of [the bank] employees, to stimulate in them a keen interest in the successful operation of [the bank's] business, and to assist them to create independent estates * * *." No indication appears that the fund is intended to cushion the impact of unexpected unemployment. Moreover, the bank is, in any event, powerless to control ultimate distribution of the funds. As each addition to the profit sharing trust is made, the funds so contributed pass irrevocably to the trustee for administration according to the agreement. Thus, the ownership interest of each employee as beneficiary of a trust share is acquired, not on separation of the

employee from employment, but on the date the employer's payment is made to the trustee.

Cases from other jurisdictions do not indicate uniformity in analysis and application of exclusionary statutes where the employee receives payment from a profit sharing plan after discharge or retirement.

In a Massachusetts case, *Kerr v. Director of the Division of Employment Security,* 332 Mass. 78, 123 N.E.2d 229 (1954), a similar profit sharing plan [2] was construed not to provide "severance pay" to a participant-employee discharged when the department in which he worked was discontinued. The Massachusetts statute disqualified employees from receiving state unemployment compensation benefits while receiving severance pay from the employer. As interpreted by the cases, severance pay and termination allowance appear to be synonymous terms. The court observed that the amount paid to the employee was exactly his share in the trust fund and was unrelated to any period of time following his discharge.

A Connecticut case examined the question of eligibility for unemployment benefits under the Connecticut statute which disqualifies the employee who receives retirement payments or a pension paid directly or indirectly by the employer. In *Zabrowski v. Administrator, Unemployment Compensation Act,* 146 Conn. 215, 149 A.2d 310 (1959), the employee was involuntarily retired and received $577.61 as her vested interest in the employer's profit sharing plan. The lump sum payment option was available, under the provisions of this particular plan, only because the comparatively small amount made installment payments administratively undesirable.

The employee argued in *Zabrowski* and the court agreed that distribution from a profit sharing plan is primarily payment of deferred compensation, a position consistent with treatment accorded profit sharing plans under the Internal Revenue Code. For reasons not elucidated in the opinion, the *Zabrowski* court concluded that payment in the nature of deferred compensation cannot be a pension but may be, and was held to be in this case, "retirement pay," thus disqualifying the employee from receiving unemployment benefits under the Connecticut statute.

Irrespective of the rationale in *Zabrowski,* the case is of minimal value here because of differences in the statutes. The case does exclude contention that a profit sharing plan distribution is equated with a pension under the statutory exclusion. The distinction between the terms "pension" and "retirement pay" requires no exposition because the Missouri statute does not use the latter term, but rather uses "termination pay," words of entirely different import.

In *Elberson v. Tokheim Corp.,* 135 Ind. App. 688, 186 N.E.2d 894 (1963), the profit sharing trust agreement provided for company contributions from profits each fiscal year and, when made, they were ratably credited by the trustee to the individual trust accounts of the employees. Any employee was entitled to draw down the funds credited to his account whenever his employment terminated for any reason including resignation. In reversing the Indiana Review Board which had held the payments to retired Tokheim employees a pension, the appellate court distinguished between the profit sharing plan and a pension. A pension, the opinion said, is characterized by installment payments over a specified period following retirement, it is neither credited to nor vested in the employees' accounts during employment and is unavailable except on retirement. The primary factors which *Elberson* considered relevant in construing the profit sharing plan not to be a pension were individual accrued vesting year by year and availability of the fund on circumstances other than retirement.

2. With minor deviations, employer profit sharing trust agreements from state to state conform to pattern language and contain almost identical provisions. This results from required adherence to U.S. Internal Revenue Code terms for tax deduction acceptance.

Although no Missouri case directly in point controls the result here, the above cited authorities offer some guide to be applied in conjunction with general principles. In the interpretation of applicable statutes, such as § 288.040, we must attempt to ascertain the legislative intent from the words used in their plain, natural meaning to promote the object of the legislation. *Beal v. Industrial Commission*, 535 S.W.2d 450, 453 (Mo.App.1975). The explicit purpose of the Employment Security Law is to benefit those persons unemployed through no fault of their own. *Rives v. Labor and Industrial Relations Commission*, 592 S.W.2d 252, 253 (Mo.App.1979); *Crawford v. Industrial Commission*, 482 S.W.2d 739 (Mo.App.1972). The decisive factor in cases where payment to a dismissed or retired employee is contended to disqualify the employee from receiving unemployment benefits is the reason for the payment. *Globe-Democrat Publishing Co. v. Industrial Commission, supra* at 851.

The persuasive tenor of argument and authority favors the decision reached by the Labor and Industrial Relations Commission. The payment made to Ruth T. Murray was neither a pension nor termination pay as those terms are used in § 288.040 to restrict unemployment compensation benefits.

While no serious argument has been advanced to classify the payment as a pension, this alternative requires comment in a full consideration of the statute. In common parlance, a pension is an allowance made to one who is retired from service and paid on account of the retiree's past work. *Local No. 688, International Brotherhood of Teamsters v. Townsend*, 229 F.Supp. 417, 419 (E.D.Mo.1964), vacated, 345 F.2d 77 (8th Cir. 1965). A pension is in the nature of an annuity for past services. *State ex rel. Wander v. Kimmel*, 256 Mo. 611, 165 S.W. 1067 (banc 1914). A pension plan qualified under the Internal Revenue Code is a program established and maintained by an employer primarily to provide for payment of determinable benefits to employees, usually for life, after retirement. A profit sharing plan is a program which the employer establishes to permit employees or their beneficiaries to participate in the profits of the business. 26 C.F.R. § 1.401 (1980).

A pension is distinguishable by the salient feature of being payable on retirement. During active employment, entitlement to a pension remains contingent because dependent on subsequent conditions including attainment of a stated age or accumulation of years of service, or both, and the actual act of retiring. Prior to retirement, the pension benefit is uncertain as to amount and maturity and may never be realized because of intervening events before the retirement date is reached.

While the claimant in the present case became eligible for distribution of her interest in the profit sharing plan upon her involuntary retirement, that circumstance was coincidental to rather than determinative of her entitlement to the benefit. Her share in the trust fund became vested long prior to the retirement and was payable to her irrespective of how her employment relation ended. Neither the amount of the benefit nor the ownership interest in it was affected by the fact that she was separated from the employment relationship by retirement.

The characteristics of a pension necessarily associated with the concept of retirement are lacking in the profit sharing arrangement. In contrast with a pension, the profit sharing plan vested ownership interests irrevocably in the employees from year to year during the course of employment and entitled the employees to distribution whenever they terminated their employment for any reason. The payment made to Ruth T. Murray was her share of accrued undistributed profits and was not a pension.

The payment also is not a termination allowance within the exclusionary provision of the statute. As indicated by the cases cited, termination or severance pay is a contribution, either voluntary or involuntary, by the employer to ease the economic impact upon a discharged employee. Because statutory unemployment compensa-

tion serves the same purpose, persons who have lost their employment but have received termination pay are disqualified from double indemnification. The critical ingredient of a termination allowance is that it is intended to serve as additional pay to the discharged employee while he seeks another source of income.

The profit sharing plan has no such attributes. As illustrated by the present case, the plan for deferred employee participation in business profits is keyed to stimulation of employee interest during employment. This purpose is fortified by crediting profits currently to the employee's account. The plan encourages service longevity but establishes a fixed ascertainable value to the employee's share each year, a share which cannot be diminished or lost once the requisite years of service have vested ownership in the employee. The profit sharing plan has no more relation to employment termination than does the accumulation by the employee of a savings deposit or any other asset. The interest the employee acquires in the plan is earned currently by virtue of the employment. The payment to Ruth T. Murray was not a termination allowance under the statute and she was not thereby disqualified from claiming unemployment compensation benefits.

Respondent bank also argues that Ruth T. Murray is disqualified from receiving unemployment benefits because she voluntarily retired pursuant to her employment contract. This argument is premised on two counts, the question of fact and the application of § 288.050.

As noted earlier in this opinion, there can be no question that Ruth T. Murray was required to accept retirement contrary to her own desire and apparent ability to continue work. The bank contends, however, that the claimant was aware in May of 1977 of the retirement policy then adopted mandating retirement of employees at age 65, that she continued work under that employment condition and therefore she acquiesced in her own enforced retirement the following December. The thrust of this argument, of course, leaves the claimant in an untenable position because her only other alternative in May 1977 was to refuse the new employment condition and quit.

Both the Industrial Commission and the circuit court rejected the contention of respondent bank that the claimant had voluntarily retired and was thus disqualified from claiming unemployment benefits. The judgment of the circuit court held the claimant to be conditionally disqualified to the extent that the amount received in the profit sharing distribution must be offset against unemployment compensation benefits otherwise payable. In practical effect, the amount of the profit sharing payment precluded any residual unemployment compensation, but the effect of the judgment is the same. On the issue of disqualification by voluntary retirement, respondent bank did not prevail, it did not appeal and it has here assumed the position of urging that the circuit court be affirmed.

When only one party appeals from a judgment, review is limited to the contentions made by him, and allegations of error raised by the respondent will not be considered. *Wagner v. Wagner*, 465 S.W.2d 655, 657 (Mo.App.1971). Not only is respondent precluded from raising this issue on which no appeal was taken, but even on its brief, respondent asserts no error in the trial court's judgment. The argument is devoid of any merit.

As to the contention that § 288.050 bars the claim, respondent quotes in its brief the condition, purportedly from "Section 288.050, RSMo 1969" disqualifying a claimant from benefits if the deputy finds "(2) that he has retired * * * in accordance with an established policy of his employer." The quoted material does appear in § 288.-050, RSMo Supp.1980, effective January 1, 1980, there is no indication that the change was to be given retroactive effect and the provision is therefore inapplicable to the events of this case in 1977.

Finally, appellant suggests that the circuit court was in error when costs were taxed against "respondent" in the judgment

as entered. The term "respondent" in the court below referred to the Labor and Industrial Relations Commission and the Division of Employment Security because Ruth T. Murray was not a party participating in the action for administrative review. The commission and the division are representatives of the State of Missouri and are not subject to assessment of costs. *Brown v. Labor and Industrial Relations Commission*, 577 S.W.2d 90, 96 (Mo.App.1978). The circuit court erred when costs here were so taxed.

The judgment of the circuit court is reversed and the cause is remanded with directions that the circuit court enter judgment affirming the decision of the Labor and Industrial Relations Commission and remand the case for processing the claim for unemployment compensation benefits consistent with this opinion.

All concur.